IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **MILDRED J. PORTER,** | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15cv00046 |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **MEMORANDUM OPINION** |
|   Acting Commissioner of | ) | |
|   Social Security, | ) | |
|    Defendant | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Mildred J. Porter, ("Porter"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Porter protectively filed an application for DIB on January 14, 2009, alleging disability as of December 22, 2008, due to depression; anxiety; hypertension; chest pain; shortness of breath; and numbness in her arm and feet. (Record, ("R."), at 175-76, 207, 211, 236, 568-70.) The claim was denied initially and on reconsideration. (R. at 96-98, 104, 106-08, 110-12.) Porter then requested a hearing before an administrative law judge, ("ALJ"). (R. at 113.) A video hearing was held on January 10, 2012, at which Porter was represented by counsel. (R. at 32-76.)

By decision dated February 17, 2012, the ALJ denied Porter's claim. (R. at 17-27.) The ALJ found that Porter met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2008. (R. at 19.) This denial was appealed, and the Appeals Council denied Porter's request for review. (R. at 1-3, 173.) Porter then filed an action in this court seeking review of the ALJ's unfavorable decision.

The undersigned entered a Report and Recommendation on April 10, 2014, in Case No. 1:13cv00015, recommending that Porter's claim be remanded to the

Commissioner for further consideration. (R. at 480-99.) By Order entered April 29, 2014, U.S. District Judge James P. Jones remanded Porter's claim to the Commissioner based on his finding that the ALJ erred in determining Porter's date last insured. (R. at 478-79.) Thus, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further consideration consistent with the order of the court. (R. at 502-04.)

On remand, a hearing was held before an ALJ on December 19, 2014. (R. at 446-77.) By decision dated March 6, 2015, the ALJ again denied Porter's claim. (R. at 430-45.) The ALJ found that Porter met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2010. (R. at 432.) The ALJ also found that Porter had not engaged in substantial gainful activity since her alleged onset date of December 22, 2008.[1] (R. at 432.) The ALJ found that the medical evidence established that Porter suffered from severe impairments, namely migraines, controlled with medications; chronic obstructive pulmonary disease, ("COPD"); hypertension; insomnia; anxiety; panic disorder; depression; borderline intellectual functioning; amnestic disorder;[2] and pain disorder, but he found that Porter did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 433.) The ALJ found that Porter had the residual functional capacity to perform

---

[1] Therefore, Porter must show that she became disabled between December 22, 2008, the alleged onset date, and June 30, 2010, the date she was last insured, in order to be entitled to DIB benefits.

[2] Amnestic syndrome is defined as an organic brain syndrome marked by short-term memory disturbance. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 37 (1995).

light work[3] that did not require more than occasional climbing, balancing, stooping, kneeling, crouching and crawling; that did not require concentrated exposure to respiratory and pulmonary irritants; that did not require more than one- to two-step tasks; that did not require interaction with the public; and that did not require more than occasional interaction with others, such as brief encounters of no more than one to three minutes at each encounter. (R. at 435.) The ALJ found that, through the date last insured, Porter was unable to perform her past relevant work. (R. at 443.) Based on Porter's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that, through the date last insured, jobs existed in significant numbers in the national economy that Porter could perform, including jobs as a night cleaner, an office helper and a mailroom clerk. (R. at 443-44.) Thus, the ALJ found that, through the date last insured, Porter was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 445.) *See* 20 C.F.R. § 404.1520(g) (2015).

After the ALJ issued his decision, Porter pursued her administrative appeals, (R. at 425-26), but the Appeals Council denied her request for review. (R. at 418-20.) Porter then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2015). The case is before this court on Porter's motion for summary judgment filed February 16, 2016, and the Commissioner's motion for summary judgment filed March 21, 2016.

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

## II. Facts[4]

Porter was born in 1958, (R. at 35, 175), which, at the time of her date last insured, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Porter has a seventh-grade education[5] and past work as a farmer and an owner-operator of a trucking company. (R. at 48.)

Porter's daughter, Crystal Reedy, was present and testified at Porter's 2014 hearing. (R. at 457-68.) Reedy stated that she began helping with Porter's business in the last year of its existence. (R. at 458.) She stated that she helped Porter run the trucking business on her days off and after work, generally helping three to four days a week. (R. at 458-59.) Reedy stated that she helped with paperwork and dispatching, as well as accounts and employee issues. (R. at 459-61.) She stated that she helped with the business because her mother was having comprehension problems and because Porter had a dispute with an account holder. (R. at 460-61.) Reedy stated that Porter also was having problems with employees and account holders because she was easily frustrated and argumentative. (R. at 461-62.) She stated that Porter began becoming more aggressive toward her and other family members, stating that Porter's behavior progressively worsened. (R. at 465-66.)

---

[4] Since Porter does not challenge the ALJ's finding concerning her physical residual functional capacity, the court will limit its discussion to the records related to Porter's mental residual functional capacity.

[5] Porter reported on her Disability Report that she completed the ninth grade, and she testified at her hearing that she completed the tenth grade. (R. at 48, 216.) However, her school records show that she completed only the seventh grade. (R. at 264.)

Case 1:15-cv-00046-PMS   Document 15   Filed 12/02/16   Page 5 of 18   Pageid#: 836

Vocational expert, Gerald Wells, also testified at Porter's hearing. (R. at 469-73.) Wells classified Porter's work as a small business owner as light and skilled. (R. at 470.) He classified Porter's work as a farmer as heavy[6] and skilled. (R. at 470.) Wells was asked to consider a hypothetical individual of Porter's age, education and work history who had the residual functional capacity to perform light work that did not require more than occasional climbing, stooping, kneeling, balancing and crouching; that did not require her to work around moderate to concentrated levels of pulmonary irritants; who would be able to understand, remember and carry out one- and two-step tasks; that did not require public interaction; and that did not require more than occasional interaction with co-workers, supervisors and others in the work environment. (R. at 471-72.) Wells stated that such an individual could not perform Porter's past jobs, but that other jobs existed in significant numbers that such an individual could perform, including jobs as a night cleaner, an office helper and a mailroom clerk. (R. at 471-72.) When asked to consider the same individual who would be limited as indicated in the assessment completed by psychologist Teresa E. Jarrell, Wells stated that there would be no jobs available that such an individual could perform. (R. at 472-73.)

In rendering his decision, the ALJ reviewed records from Russell County Public Schools; Julie Jennings, Ph.D., a state agency psychologist; Dr. Joseph Duckwall, M.D., a state agency physician; Coeburn Hospital Clinic, Inc.; Teresa E.

---

[6] Heavy work is defined as work that involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If an individual can do heavy work, she also can do sedentary, light and medium work. *See* 20 C.F.R. § 404.1567(d) (2015).

-6-

Case 1:15-cv-00046-PMS   Document 15   Filed 12/02/16   Page 6 of 18   Pageid#: 837

Jarrell, M.A., a licensed psychologist; Patricia Buston, L.C.S.W., a licensed clinical social worker; C-Health of Lebanon; Stone Mountain Health Services; and Community Medical Care 1.

On March 25, 2004, Porter was seen by Tonia Mitchell, F.N.P., a family nurse practitioner at Community Medical Care 1. (R. at 590-92.) Porter reported that her panic attacks were controlled with medication and that her depression was improving with medication. (R. at 590.) She was diagnosed with unspecified anxiety state and depressive disorder, not elsewhere classified. (R. at 592.)

On January 8, 2008, Rebecca Varney, F.N.P., a family nurse practitioner with C-Health of Lebanon, saw Porter for complaints of cough and depression. (R. at 280.) She reported that she was not on antidepressant medication. (R. at 280.) Porter complained of stressors resulting from marital problems. (R. at 280.) Varney reported that Porter was alert and oriented; she had an appropriate affect and demeanor; and her insight and judgment were good. (R. at 281.) Varney diagnosed Porter with major depression, recurrent, moderate. (R. at 281, 287.) On January 7 and January 14, 2009, Porter complained of anxiety and depression. (R. at 277, 283.) She reported stress related to marital problems. (R. at 277, 283.) On January 14, 2009, Porter reported that she was taking Celexa. (R. at 283.) Varney reported that Porter was alert and oriented; she had an appropriate affect and demeanor; and good insight and judgment. (R. at 278, 284.) Varney diagnosed adjustment disorder with mixed anxiety and depressed mood. (R. at 278, 284.) On January 14, 2009, the Folstein Mini Mental Status Examination was given, which noted some decreased recall and register likely due to depression. (R. at 285, 294.) On

February 18, 2009, Porter was seen for depression. (R. at 289.) She reported recent stressors that included marital problems, financial problems and her son's recent breakup with a girlfriend. (R. at 289.) Varney reported that Porter was alert and oriented; she had an appropriate affect and demeanor; and good insight and judgment. (R. at 290.)

The record shows that Porter received treatment from Stone Mountain Health Services, ("Stone Mountain"), from 2009 through 2013 for insomnia, depression and anxiety. (R. at 305-414.) On November 19, 2009, Porter complained of anxiety, depression and anger. (R. at 415.) Porter was anxious and was intermittently tearful at times when talking about being short-tempered with her family. (R. at 415.) She reported that her biggest stressor was her drop in income, stating that she could not consider re-entering the workforce, secondary to her anxiety and depression. (R. at 415.) She was diagnosed with an adjustment disorder with mixed anxiety and depression. (R. at 415.) On December 14, 2009, Porter had normal memory, mood, affect, judgment and insight. (R. at 309.) It was noted that her depression and insomnia were improving with medication. (R. at 308, 311, 413.)

On April 28, 2010, Porter reported that she was doing well and feeling good. (R. at 407.) She stated that she was gardening and taking more time for herself. (R. at 407.) Porter also stated that she was looking forward to traveling to South Carolina to visit her granddaughter. (R. at 407.) It was noted that Porter's depression and anxiety were stable. (R. at 407.) On May 12, 2010, Porter stated that she needed to find something to do to make money. (R. at 406.) She reported

-8-

doing better. (R. at 406.) Porter was calm and attractively attired with a new haircut. (R. at 406.) On June 29, 2010, Porter reported that she traveled to South Carolina every other weekend with her son to visit her granddaughter. (R. at 402.) She reported that she was doing well, stating that her anxiety and insomnia were improving. (R. at 402.) While Porter reported stress and anger related to her son's custody issues, it was noted in October 2010 that her mood and affect had much improved. (R. at 395, 397, 399.) Progress reports throughout 2010 show that Porter had normal memory, mood, affect, judgment and insight. (R. at 306, 351, 354, 357, 360, 363.)

In March 2011, Porter stated that things had improved, and she was more calm and focused. (R. at 392.) In August 2011, Porter was neatly clean and casually dressed; she made good eye contact; her speech was normal; she had good insight and judgment; her affect was sad and flat; she had fair communication; and there was no evidence of a thought disorder. (R. at 391.) On December 13, 2011, Porter had an anxious affect; depressed mood; no psychosis; normal voice tone; no suicidal or homicidal ideations; and fair to good judgment. (R. at 389.)

On December 20, 2011, Patricia Buston, L.C.S.W., a licensed clinical social worker, reported that Porter had a depressed mood; anxious affect; no psychosis; limited eye contact; normal voice tone and rate; no suicidal or homicidal ideations; and she was insightful. (R. at 388.) Progress reports throughout 2011 show that Porter had normal memory, mood, affect, judgment and insight. (R. at 333, 339, 342, 345.)

On January 5, 2012, Buston completed a mental assessment, indicating that Porter had a seriously limited, but not precluded, ability to deal with the public; to use judgment; to function independently; to maintain personal appearance; and to demonstrate reliability. (R. at 416-17.) She found that Porter had no useful ability to follow work rules; to relate to co-workers; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex, detailed and simple job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 416-17.)

On July 30, 2012, Porter was seen at Stone Mountain. (R. at 638-40.) It was noted that Porter was oriented; she had normal memory, insight and judgment; and she had a depressed mood and affect. (R. at 639.) On March 19, 2013, Porter was oriented, and her memory, mood, affect, judgment and insight were normal. (R. at 705.) On December 3, 2012, Bridgette Smith, F.N.P., a family nurse practitioner with Stone Mountain, reported that Porter was oriented; her recent and remote memory were intact; and she had a euthymic mood and appropriate affect. (R. at 630.) On February 20, 2013, Buston reported that Porter was casually dressed with good hygiene; she made good eye contact; her voice range and tone were normal; she was oriented; her memory was good; and she had fair insight and judgment. (R. at 623.) In September 2013, Porter reported that she was moody and grouchy. (R. at 678.) She stated that she did not want to work on her mood. (R. at 678.) Her judgment was appropriate; she had good insight; she was oriented; she had intact recent and remote memory; and her mood was euthymic with an appropriate affect. (R. at 683.) In December 2013, Dr. Pema O. Bhutia, M.D., reported that Porter's depression and anxiety were stable. (R. at 676.) She denied disturbing thoughts or

-10-

feelings; change in sleep pattern; difficulty focusing; hyperactivity; moodiness; and obsessive thoughts or compulsions. (R. at 676.) Dr. Bhutia reported that Porter's judgment was appropriate; she had good insight; she was oriented; she had intact recent and remote memory; her mood was euthymic; and her affect was appropriate. (R. at 676.) On September 30, 2014, Porter complained of having mood swings, stating that she "went off on [her husband], [p]icked up a brick and threw it at him." (R. at 726.) She also reported that she argued with other family members. (R. at 726.) Progress reports throughout 2014 show that Porter's judgment was appropriate; she had good insight; she was oriented; she had intact recent and remote memory; her mood was euthymic; and her affect was appropriate. (R. at 709, 712, 716, 722, 729, 744.)

On April 19, 2010, Julie Jennings, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Porter had moderate limitations on her ability to perform her activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 87-88.) Jennings found that Porter had not experienced any episodes of decompensation of extended duration. (R. at 88.)

That same day, Jennings completed a mental assessment, indicating that Porter had no significant limitations in her ability to remember locations and work-like procedures; to understand, remember and carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to make simple work-related decisions; to ask simple questions or request assistance; to maintain socially

-11-

appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; and to travel in unfamiliar places or use public transportation. (R. at 90-92.) She opined that Porter had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to set realistic goals or make plans independently of others. (R. at 91-92.)

On May 16, 2012, Teresa E. Jarrell, M.A., a licensed psychologist, evaluated Porter at the request of Porter's attorney. (R. at 608-14.) Porter reported that she had been seeing a counselor for nearly one year, but she had never been hospitalized for inpatient psychiatric treatment. (R. at 609.) Jarrell reported that Porter had a mildly anxious mood and restricted affect. (R. at 610.) Jarrell noted that Porter did not endorse symptoms consistent with delusions, illusions or obsessive compulsive behavior patterns. (R. at 610.) She reported that Porter endorsed mildly paranoid thoughts. (R. at 610.) Jarrell reported that the Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and

-12-

Case 1:15-cv-00046-PMS   Document 15   Filed 12/02/16   Page 12 of 18   Pageid#: 843

Porter obtained a verbal IQ score of 70 and a full-scale IQ score of 70. (R. at 611-12.) Jarrell diagnosed severe, recurrent major depressive disorder without psychotic features; panic disorder without agoraphobia; generalized anxiety disorder; amnestic disorder, not otherwise specified; pain disorder associated with both psychological factors and general medical condition; and borderline intellectual functioning. (R. at 612-13.) Jarrell assessed Porter's then-current Global Assessment of Functioning score, ("GAF"),[7] at 50.[8] (R. at 613.)

Jarrell noted that Porter's prognosis was poor and that she did not anticipate that she could successfully re-enter the competitive workforce. (R. at 613.) She reported that Porter did not have the cognitive capability to carry out detailed or complex instructions. (R. at 613.) Jarrell reported that Porter's capacity for concentration, even on a short task in a quiet setting, was mildly deficient. (R. at 613.) She reported that Porter's memory impairments hindered her ability to meet performance expectations in a work setting. (R. at 613.) The Cognistat 2011[9] and mental status examination substantiated moderate memory problems. (R. at 613.) Jarrell reported that Porter's ability to repetitively carry out simple job instructions was hindered by the combination of her physical health problems, psychiatric

---

[7] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[8] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

[9] The Cognistat Assessment rapidly assesses neurocognitive functioning in the three general areas of level of consciousness, orientation and attention span. *See* www.cognistat.com/what-cognistat-tests (last visited Dec. 2, 2016).

-13-

symptoms and problems with memory and concentration. (R. at 613.) She also noted that problems with punctuality, pace and attendance were highly likely due to the combination of Porter's physical health problems and psychiatric symptoms. (R. at 613.) Jarrell found that Porter would have great difficulty meeting expectations of personal-social adjustment in a full-time work setting. (R. at 614.)

On June 26, 2012, Jarrell completed a mental residual functional capacity questionnaire, indicating that Porter had a limited, but satisfactory, ability to ask simple questions or request assistance and to adhere to basic standards of neatness and cleanliness. (R. at 603-07.) She found that Porter had a seriously limited, but not precluded, ability to understand, remember and carry out very short and simple instructions; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being unduly distracted; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to be aware of normal hazards and take appropriate precautions; to set realistic goals or make plans independently of others; to interact appropriately with the general public; to maintain socially appropriate behavior; to travel in unfamiliar places; and to use public transportation. (R. at 605-06.) Jarrell opined that Porter was unable to meet competitive standards in her ability to remember work-like procedures; to maintain attention for two-hour segments; to maintain regular attendance and be punctual within customary, usually strict tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to

respond appropriately to changes in a routine work setting; to deal with normal work stress; and to deal with stress of semi-skilled and skilled work. (R. at 605-06.) She found that Porter had no useful ability to understand, remember and carry out detailed instructions. (R. at 606.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See*

*Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Porter argues that the ALJ's decision is not based on substantial evidence of record. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-16.) In particular, Porter argues that the ALJ erred by failing to properly evaluate the opinion evidence of Jarrell and Buston. (Plaintiff's Brief at 10-16.) Based on my review of the record, I find this argument unpersuasive. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ found that Porter's date last insured was June 30, 2010. (R. at 432.) The ALJ noted that the evidence prior to the date last insured did not support the degree of limitation alleged by Porter. (R. at 443.) Porter argues that the ALJ erred by failing to properly evaluate the opinion evidence of Jarrell and Buston. (Plaintiff's Brief at 10-16.) While Porter acknowledges that Jarrell's and Buston's opinions were rendered after her date last insured, she argues that they were reflective of her limitations prior to June 30, 2010. The ALJ noted that he was giving Buston's and Jarrell's opinions, as well as Reedy's testimony, little weight

because they were inconsistent with the medical evidence of record. (R. at 443.) The ALJ noted that the opinions and Reedy's recollections were not reflected in Porter's treatment notes during the relevant time period. (R. at 443.) The ALJ found that the record showed that Porter was exhibiting some problems with memory as indicated by the Folstein Mini Mental Status Examination performed in January 2009. (R. at 294, 443.) The record shows that Porter generally did not complain of memory deficits, but instead reported different situational stressors. (R. at 277, 280, 283, 289, 415.)

The record shows that in March 2009, state agency physician, Dr. Thomas M. Phillips, M.D., found that Porter's mental status was normal two months previously. (R. at 82.) In November 2009, it was noted that Porter's symptoms of depression were improving. (R. at 368.) In December 2009, it was noted that Porter's mood and affect had improved. (R. at 413.) From December 2009 through March 2011, Porter continued to report that she was doing well, stating that her anxiety symptoms had decreased. (R. at 392-93, 395, 402, 406-07, 411, 413.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Porter reported that she enjoyed trips almost every other weekend to South Carolina to visit her grandchild. (R. at 398, 402, 406-07.) In the four counseling sessions of record with Buston, Porter was observed to be neat and clean, with good eye contact, normal speech and good insight and judgment and no thought disorder or psychosis. (R. at 388-91.) However, in January 2012, Buston completed a mental assessment, indicating that Porter had a seriously limited, but not precluded, ability to no useful ability to perform all work-related mental activities. (R. at 416-17.) Furthermore,

-17-

progress reports from 2012 through 2014 show that Porter's judgment was appropriate; she had good insight; she was oriented; she had intact recent and remote memory; her mood was euthymic; and her affect was appropriate. (R. at 623, 630, 639, 676, 683, 705, 709, 712, 716, 722, 729, 744.) In December 2013, Porter denied difficulty focusing and moodiness, and Dr. Bhutia reported that Porter's depression and anxiety were stable. (R. at 676.)

Based on the above reasoning, I find that substantial evidence exists in the record to support the ALJ's finding that Porter was not disabled prior to her date last insured. An appropriate Order and Judgment will be entered.

ENTERED: December 2, 2016.

                       s/ *Pamela Meade Sargent*
                           UNITED STATES MAGISTRATE JUDGE